```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


UNITED STATES OF AMERICA,      )
                               )
Plaintiff,                     )
                               )
vs.                            )      No. 2:14-CR-102
                               )
CARL TAYLOR,                   )
                               )
Defendant.                     )
```

## OPINION AND ORDER

This matter is before the Court on the Amended Motion to Suppress Tangible Evidence and Statements, filed by Defendant, Carl Taylor, on July 28, 2015 (DE #39). For the reasons set forth below, the request for a hearing is **DENIED** and the motion to suppress (DE #39) is also **DENIED**.

BACKGROUND

On October 16, 2014, Taylor was charged via indictment with a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. On March 12, 2015, Defendant was arraigned and an order was entered requiring all pretrial motions to be filed by April 9, 2015. (DE #9.)

On April 27, 2015, Taylor moved for a continuance of the trial and final pretrial conference, but did not request any extension of time to file pretrial motions. (DE #11.)

On June 26, 2015, the Government filed a plea agreement signed by Taylor. (DE #13.) On July 1, 2015, a change of plea hearing began before this Court, but was interrupted due to technical difficulties. On July 2, 2015, at Defendant's request, a continuance was granted until July 13, 2015, for the change of plea hearing. (DE #16.) On July 7, 2015, Taylor filed a motion to suppress tangible evidence (DE #18), and a motion to suppress statements (DE #19). On July 15, 2015, this Court denied the motions to suppress as untimely (they were filed 89 days late), noting even if the motions to suppress were considered on their merits, they would still fail. (DE #24, p. 3 n.1.) Defendants moved for reconsideration. (DE #26.) Following hearings on July 17 and July 20, 2015, this Court found the motions were untimely, and they did not meet the requirements of providing facts specific enough to justify a hearing, but, out of an abundance of caution, allowed Defendant to file the motions to suppress, and ordered him to brief why a hearing was necessary. (DE ##30, 36.) Defendant filed the instant amended motion to suppress on July 28, 2015 (DE #39.)

The motion to suppress tangible evidence claims the police entered Defendant's home without a warrant, and, over Defendant's refusal to give consent, searched the home for a firearm. (DE #39, p. 2.) Additionally, the motion to suppress statements claims that Defendant's arrest was made without probable cause, and that his

2

post-arrest statements to officers were involuntary. (*Id.*, pp. 6-8.)

DISCUSSION

A district court is not required to conduct an evidentiary hearing on every motion to dismiss. The Seventh Circuit has explained that, "[a] defendant seeking an evidentiary hearing on a motion to suppress must provide sufficient information 'to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.'" *United States v. Juarez*, 454 F.3d 717, 719-20 (7th Cir. 2006) (citing *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998)). In order to justify relief, motions to suppress must be "sufficiently definite, specific and non-conjectural" and must be "detailed enough to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Coleman*, 149 F.3d at 677 (citing *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988)). The Court "must conduct such a hearing 'only if evidence on an issue of fact is necessary to the decision of the motion.'" *Rollins*, 862 F.2d at 1291 (quoting *Nechy v. United States*, 665 F.2d 775, 776 (7th Cir. 1981)). Because Defendant requested the hearing, he "[bears] the burden of showing that there were disputed issues of material fact

3

necessitating an evidentiary hearing." *Id.* As discussed below, defendant has failed to meet this burden.

Motion to Suppress the Gun Recovered From 2010 Lane Street

Defendant has the burden of proving he has a legitimate expectation of privacy in the area searched. *See United States v. Ruth*, 65 F.3d 599, 604 (7th Cir. 1995). A government agent's search is unreasonable when it infringes on "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109 (1984). To challenge a search, the defendant "must show that he had both a subjective and objective expectation of privacy in the item or location searched." *United States v. Crowder*, 588 F.3d 929, 934 (7th Cir. 2009) (citing *United States v. Haywood*, 324 F.3d 514, 515-16 (7th Cir. 2003)).

The parties agree that on September 8, 2014, officers with the Gary Police Department responded to a call for shots fired in the area of 2035 Willard Street. Upon arriving at the scene, Quina Spencer (Taylor's sister), received a phone call stating Defendant was at 2010 Lane Street. According to Officer Jeffrey Patrick (of the Gary Police Department), when he arrived at 2010 Lane Street, Taylor was being taken into custody. (Patrick Aff., DE #41-2, ¶ 5.) Officer Patrick was given information that Taylor may have hidden a firearm within the residence at 2010 Lane Street. (*Id.* ¶ 6.) Anthony Floyd, who identified himself to law enforcement as a

resident of the house, gave Officer Patrick consent to enter 2010 Lane Street for the specific purpose of looking for a firearm. (*Id.* ¶ 7.) Anthony Floyd and Officer Patrick entered the residence together and searched for the firearm in the front room. (*Id.* ¶ 8.) Officer Patrick found a firearm under the couch cushion in the front room, and the search ended. (*Id.* ¶ 9.) Anthony Floyd identified the firearm found in the residence as the firearm which Taylor possessed. (*Id.* ¶ 10.) Officer Patrick stated in his affidavit that, "[a]t no time did another resident of 2010 Lane Street express to me that they were refusing to consent to the search of the house" and "[a]t no time did I hear Carl Taylor claim that he was a resident of 2010 Lane Street or that he was refusing to give consent to search the house." (*Id.* ¶¶ 13, 14.)

Defendant concedes that the house at 2010 Lane Street belonged to his grandmother (DE #39, p. 2), but claims he "has maintained a residence at the home" and thus had an expectation of privacy in the house. (*Id.*) To support this assertion (that 2010 Lane Street was Defendant's legal residence): (1) Defendant attached a presentence report from 2011 indicating his legal residence was 2010 Lane Street (DE #39, Ex. 1); (2) alleges that Officer Jason Johnson testified during a detention hearing that he believed Defendant lived at 2010 Lane Street; and (3) Attorney Soble states in her memorandum it was a "family home" and his "legal residence." (DE #39, p. 6.)

5

The presentence report from 2011 has no bearing on Defendant's current legal resident - the fact that Defendant may have lived at 2010 Lane Street is irrelevant to the question at hand which is where he lived three years later, on September 8, 2014.

Officer Johnson, who was present at the time of the search, testified at a detention hearing in front of Magistrate Judge Paul Cherry on March 12, 2015 (DE #9). The recording of the hearing is poor quality, and it is the Court's understanding that there is no written transcript from it. When questioned by Ms. Soble if the officer knew if Taylor lived there, it is difficult to hear his response. Indeed, this Court is not comfortable speculating on what Officer Johnson actually said. But then, it *is* clear on the recording that Judge Cherry says, "Let me just cut to it, do you know who owns that house or possessed that house or whose house it was? [No.] Ok, he doesn't know." (March 12, 2015 recording, 11:58.) This testimony is not definite enough to establish that 2010 Lane Street was Taylor's legal residence. Even if Officer Johnson did believe Taylor lived there, a third party's subjective belief has no bearing on the legal question of whether Taylor had an expectation of privacy in the property.

Regarding Attorney Soble's contention that it was a "family home," the Government agrees to the extent it is owned and occupied by Taylor's grandmother, and uncle, Anthony Floyd (whose names are on the property, DE #41-1). Attorney Soble's contention that 2010

Lane Street was Taylor's legal residence is a bare conclusion - not supported by sufficient facts or information.

In contrast to these arguments, the Government has put forth specific, supported, facts showing Taylor did not have an expectation of privacy in the property. First, the assessment documentation is in the name of Annie Floyd and Anthony Floyd. (DE #41-1.) Second, on September 9, 2014, the day after his arrest, Defendant stated in an interview with ATF that he lived at 1077 Ralston Street. (DE #41-4 at 1:27-1:40, a disc containing the interview with Defendant which this Court watched in its entirety). When asked during the interview whose home was 2010 Lane Street, Taylor claimed it was his uncle's, Anthony Floyd's. (*Id.* at 15:10-15:20.) In discussing 2010 Lane Street, Taylor stated he has not been inside his grandmother's house in four or five months. (*Id.* at 15:20-15:30.) When asked if he remembered going into his uncle's house, he replied, "I don't remember going in there." (*Id.* at 16:50-17:10.) When Taylor was told a firearm was found hidden in the residence, he stated, "not my house." (*Id.* at 23:25-23:40.) After he was indicted, Taylor again gave his address to the probation department as 1077 Ralston Street, and told probation that at the time of his arrest, he was residing at his mother's house at 1077 Ralston Street, Gary, Indiana. (DE #6, PSR, p. 1.)

In granting Defendant a second bite at the apple, in which to provide all supporting facts to this Court in support of his

argument that a hearing is necessary on this motion, this Court expected more. There is no affidavit from Taylor showing 2010 Lane Street was his legal residence, no bills, no official papers, indeed, nothing specific or definite to support this bare conclusion. Taylor has failed to show a legitimate expectation of privacy in the house searched, and he has not set forth a disputed issue of material fact. As such, Defendant lacks standing to challenge the search at 2010 Lane Street because he did not have a reasonable expectation of privacy in the house.

Finally, even if Defendant could show standing, his claim would still fail on the merits. The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant; however, it is not valid when a physically present co-occupant refuses to consent. *Georgia v. Randolph*, 547 U.S. 103 (2006). Attorney Soble writes in her memorandum that "Mr. Taylor refused to give officers consent to search the home," yet Defendant did not submit an affidavit or submit any other evidence in support of this bare assertion. "[E]ven if a defendant expressly indicates to an officer that he does not have consent to search, his co-occupant still retains the authority to consent so long as the defendant is not standing at the door and so long as the police have not removed him." *Dakhlallah v. Zima*, 42 F.Supp.3d 901, 917

8

(N.D. Ill. 2014). Here, there is no evidence the police forcefully removed Defendant from the house, and indeed, no evidence that Taylor told the police they could not search the house. To the contrary, Officer Patrick attests that Anthony Floyd, who identified himself as a resident, gave him consent to search 2010. (DE #41-2 ¶ 7.) Officer Patrick also attests that at no time did another resident of 2010 Lane Street express to him they were refusing to consent to the search of the house, and at no time did he hear Defendant claim he was a resident of 2010 Lane Street, or that he was refusing to give consent to search the house. (DE #41-2, ¶¶ 13, 14.) As such, the search is valid on its merits as well.

Suppression of Post-Arrest Statement

Defendant also argues that his post-arrest statement should be suppressed because there was no probable cause to arrest him and the statements are fruits of an illegal arrest. This argument has been foreclosed by this Court finding that the search of 2010 Lane Street was legal, and thus the recovery of the firearm gave the police probable cause for arrest.

Finally, Defendant claims his statement (made after he was given his Miranda warning, see DE #41-3), was not given voluntarily. The "test for a voluntary confession is 'whether the defendant's will was overborne at the time he confessed.'" *United*

9

*States v. Haddon*, 927 F.2d 942, 945-46 (7th Cir. 1991) (quoting *United States v. Hocking*, 860 F.2d 769, 774 (7th Cir. 1988)). Coercive police activity must be causally related to a confession for it to be involuntary within the meaning of the Fourteenth Amendment. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986) ("Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.").

Although Defendant insists he must receive a hearing just because he claims the interview was involuntary, this simply is not true. He first must meet the burden of making a prima facie showing of illegality. *Rollins*, 862 F.2d at 1291 (defendant had the burden of presenting "definite, specific, detailed, and non-conjectural facts" to establish there was a disputed issue of material fact as to the voluntariness of his confession). In this case, the Defendant has not put forth any specific, detailed facts to show there is a disputed issue of material fact.

This Court has watched and reviewed Government Exhibit 4, which is a CD containing the interview of the Defendant on September 9, 2014, in its entirety. The only facts Defendant claims go towards whether his "will" was overborne, are the following: first, that Defendant was arrested at his home after obtaining injuries so grave they required attention in a hospital. (DE #39, p. 8.) The Government agrees this is true, and this Court

views it as a good thing that Defendant's injuries were tended to first before taking him to jail to be booked. Defendant appeared lucid in the interview, and gave no indication he was in pain. Second, Defendant also claims after the ordeal, two armed government official questioned Defendant. On the interview tape, the ATF agents appear in plain clothes, and the Government asserts they were not armed. (DE #41, p. 15.) Regardless of whether the officers were armed, certainly no arms were seen during the interview, and there are no facts in contention that go towards whether Taylor's will was overborne. Third, Defendant claims he was "frightened, confused and intimidated." (DE #39, p. 8.) This allegation seems preposterous after viewing the interview – Defendant was clearly relaxed, and chatted with the officers in a very comfortable, non-confrontational manner. There was no physical or psychological tactics used by the officers, no force used whatsoever, and no coercive behavior – indeed, all participants talked calmly. Taylor was read his rights and seemed to understand everything that was occurring. Ms. Soble's statement that "[p]rior to questioning, several witnesses expressed concern to law enforcement that Mr. Taylor was under the influence of a substance" (DE #39, p. 8), is completely unsubstantiated, and belied by Taylor's diction and demeanor during the interview.

Finally, and possibly most importantly, Defendant did not confess to the crime of felon in possession (or any other crime) in

his interview with law enforcement.  Defendant is steadfast in his story that he never had a firearm, he did not point a gun at anyone, and he did not take a firearm into the house.  Rather, Defendant claims the witnesses in the case are lying.  Simply put, Taylor's will was not overborne - because he admitted nothing.

CONCLUSION

For the aforementioned reasons, the request for a hearing is **DENIED** and the motion to suppress (DE #39) is also **DENIED**.

**DATED:    August 19, 2015**          /s/ RUDY LOZANO, Judge
                                       **United States District Court**